UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-21162-CIV-LENARD/GOODMAN

MARY QUINTERO,

      Plaintiff,

v.

JORGE LUIS LOPEZ and
MARILE LOPEZ,

      Defendants.
_____/

**CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

      Defendants Jorge Luis Lopez and Marile Lopez (the "Defendants"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and this Court's Local Rule 7.5, hereby submit the following concise statement of undisputed material facts in support of their motion for summary judgment.

      **1.**      Plaintiff Mary Quintero worked for Defendants as a domestic services employee from July 4, 2007 until February 27, 2015. (Complaint, D.E. 1 at ¶8); (**Exhibit 1**, Quintero Dep., 7:21-22). Ms. Quintero was an hourly paid employee and was paid $13.00 an hour until January 2015, at which time her salary was increased to $14.00 an hour. *See* D.E. 1 at ¶13.

      **2.**      Plaintiff was employed as a live-in domestic worker at the Lopez residence until November 30, 2012, at which time she was reemployed as a non-live in housekeeper. (Quintero Dep., 13:13-17, 14:1-3).

      **3.**      Beginning on December 1, 2012, Plaintiff's work schedule was from 7:00 a.m. to 4:00 p.m., with a one-hour lunch break in between. (Quintero Dep., 14:18:21; 22-15:1; 26:22-27:6). Ms. Quintero testified that she understood she was entitled to a one-hour lunch break. (Quintero Dep., 19:15-17) ("Q. Ms. Quintero, but you just testified that you understood you were entitled to a one-hour lunch break? A. Yes.").

      **4.**      Employees were permitted to cook their own meals at the Lopez household, or to go anywhere they wished during their one-hour lunch break. (**Exhibit 2**, M. Lopez Dep. 20:10-

18) ("Q   Would they be permitted to go anywhere they wanted to for the hour? A. Of course. Q. Earlier you mentioned something about groceries. Did you provide the meals for all the employees? A. Yes, I did. They also could bring their own and cook it there, which I understand would happen as well.").

5. Ms. Quintero testified that she understood that she was employed to work *eight* hours a day, *40* hours a week, and that Mr. and Mrs. Lopez would not pay for her one-hour meal period. (Quintero Dep. 24:11-18; 26:21-23); (Quintero Dep., 28:24-29:4) ("You understood . . . that Ms. Lopez did not pay for the one-hour lunch break, and you decided to work during that lunch hour anyway, correct? A. That's correct.").

6. Although Mr. and Mrs. Lopez did not pay Ms. Quintero for her one-hour lunch break, Mr. and Mrs. Lopez paid Ms. Quintero five vacation days and four holidays a year. (M. Lopez Dep., 27:17-23); (Quintero Dep., 24:11:15). These holidays and vacation days consist of eight hours. *Id*.

7. During Ms. Quintero's pendency as an employee of Mr. and Mrs. Lopez, there were two other employees working at the house: Lidia Gonzalez, a housekeeper, and Maria Cecilia, a nanny. (M. Lopez Dep., 20:24-21:3-12).

8. Employees at Mr. and Mrs. Lopez's home, including Ms. Quintero, were instructed to document their time in time sheets provided to them and to submit the completed time sheets to Maria Fernanda Rodriguez, the person who handles payroll for Mr. and Mrs. Lopez. (Quintero Dep., 29:7-9, 23:9-11); (M. Lopez Dep., 13:1-8, 13:17-21, 19:5-7).

9. Ms. Rodriguez was instructed to pay all of Mr. and Mrs. Lopez's employees each and every hour that these employees recorded on their time sheets. *See* (M. Lopez Dep., 20:2-6); *See Affidavit of M. Lopez* attached as **Exhibit 3** at ¶3.

10. Ms. Quintero testified that she took lunch at approximately 1:00 p.m., but that she did not take a full lunch break because she had to answer the phones and open the door for visitors who came to the house. (Quintero Dep., 35:4-8) ("Q. Approximately what time did you take your lunch break? A. at around 1:00 p.m. give or take."); (Quintero Dep. 16:8-10); 16:17-20 ("But you do understand you could have taken the full one-hour lunch break? A. I understand that part, but then there was lot of sense of responsibility on my part."); (Quintero Dep., 32:21-25) ("Q. So the one-hour lunch break that you are claiming here, its because claim that you had to answer the phone and open the door? A. That's exactly right."); (Q. And your testimony is that

2

you could not take a lunch break because you had to answer the phones? A. yes. Q. And because you had to open the door? A. Yes.").

**11.** Ms. Quintero testified that it was her own choice not to take the full one-hour lunch break. Quintero Dep., 18:7-10 ("Q. You also testified that you did not take your one-hour lunch break because you elected to work instead? A. That's correct."); 27:2-6 (Q. So it was your choice not to take your one-hour lunch break? A. Yes.").

**12.** Ms. Quintero, Mrs. Lopez, and Mr. Lopez all testified that Mr. and Mrs. Lopez were rarely at the house during the time that Ms. Quintero took her lunch break. (Quintero Dep., 16:23-17:2) (Q. "Mr. and Mrs. Lopez were not in the house during your lunch break, correct? A. Rarely."); (M. Lopez Dep., 20:19-23) ("Q. Do you know generally how they would take their lunches? . . . A. I really don't know. Very rarely was I ever there to see this. I don't know."); (**Exhibit 4**, J. Lopez Dep., 8:6-12, 7:1-2) ("A. I leave early in the morning and I come home late."); (M. Lopez Dep.,8:10-16) ("[So] I leave the house everyday at 7:35 a.m., and I do not come back to my house until approximately 6:30 in the evening. I do not know when [Ms. Quintero] would take her lunch hour, but she was instructed to do so.").

**13.** Ms. Quintero testified that although she was aware that she could have informed Mr. and Mrs. Lopez if she did not take her full one-hour lunch break, or that she felt she should be paid for nine hours a day, ***she never did so***. (Quintero Dep. 17:9-11) ("Q. But you never told Mr. and Mrs. Lopez that you weren't taking your full one-hour lunch break? A. No."); (Quintero Dep., 9:8-9) ("Q. Did you, at any time during your employment, tell your employer that you were working nine hours? A. No. Q. Why not? A. I don't know."); (Quintero Dep., 10:1-3 (Q. And you also stated that you never complained correct? A. Yes."); (Quintero Dep., 10:1-7) ("Q. But you could have complained to Mr. and Mrs. Lopez, if you felt you were not being paid? A. That's true."); (Quintero Dep., 19:15-17) ("Q. Ms. Quintero, but you just testified that you understood you were entitled to a one-hour lunch break? A. Yes. Q. But you never complained about it? A. Because I was silly.").

**14.** Ms. Quintero testified that she occasionally contacted Maria Fernanda Rodriguez, the bookkeeper charged with issuing paychecks, regarding work matters. (Quintero Dep., 22:21-23:6). Ms. Quintero also testified that she could have alerted Ms. Rodriguez if her paystubs were inaccurate. (Quintero Dep. 23:21-24:1).

15. Ms. Quintero testified that she was instructed to document all her time in the time sheets provided to her. (Quintero Dep., 29:7-9).

16. Ms. Quintero testified that she reviewed her paystubs and that the paystubs accurately reflected that she she was compensated at the overtime hourly rate when she worked overtime. (Quintero Dep., 23:15-20) ("Q. Did you ever review your pay stubs? A. Yes. Q. And those paystubs reflected when you were actually – when you worked overtime, that you were paid overtime correct? A. Yes.").

17. Ms. Quintero testified that she did not include the extra hour when she filled her time sheets because she understood that her work scheduled called for her to work eight hours a day. (Quintero Dep., 29:19-23) (Q. Why didn't you put in 9? A. Because the lady was clear in saying its eight hours a day, 40 hours a week. Q. And that's something you understood? A. Yes.").

18. Ms. Quintero testified that Mr. and Mrs. Lopez paid her overtime when ever Mrs. Lopez requested that she work overtime. (Quintero Dep. 27:24-28:4). Mrs. Quintero's pay stubs reflect that Mrs. Quintero was paid time and a half her hourly rate on the weeks that she worked overtime. *See* Quintero Paystubs, attached as **Exhibit 5**.

19. Plaintiff ended her employment with Mr. and Mrs. Lopez on March 2, 2015. (Quintero Dep. 41:11-24). After her employment ended, Plaintiff called the J.H Zidell law firm (after watching a television advertisement) who on March 24, 2015 filed this action on her behalf. *See* Ex. 1 (Quintero Dep., 8:18-21).

20. Ms. Quintero testified that she responded to the television advertisement because she believes that sometime was owed to her because she was at Mr. and Mrs. Lopez's home for nine hours each day, without regard to whether she was working for all of those hours. *See* Ex. 1 (Quintero Dep., 9:3-10) ("Because in math, I was nine hours in the house.").

21. Ms. Quintero testified that she never reviewed the complaint which was filed by the J.H. Zidell law firm on her behalf. (Quintero Dep., 10:13-16).

22. During the week of November 3, 2015, Ms. Quintero was residing at the Lopez residence and was employed as a live-in domestic services employee. *See Affidavit of M. Lopez* attached as **Exhibit 3** at ¶¶5-6. Ms. Quintero was asked to, and agreed, to work and reside at the residence during this week since Lidia Gonzalez, another employee at the Lopez household, was going to be out during that week. *Id.*

**Dated**: February 24, 2016.

                                                     Gabriel E. Nieto, Esq. FBN 14755
                                                     Miguel A. Morel, Esq. FBN 89163
                                                     RASCO KLOCK PEREZ NIETO
                                                     2555 Ponce De Leon Blvd., Suite 600
                                                     Coral Gables, Florida 33134
                                                     Telephone: 305.476.7105
                                                     Facsimile: 305.675.7707

                                             By: */s/ Miguel A. Morel*
                                                   Miguel A. Morel


<u>**CERTIFICATE OF SERVICE**</u>

     **I HEREBY CERTIFY** that on February 24, 2016, I served the foregoing document, via e-mail, on all counsel of record identified in the service list below.

                                             By: */s/ Miguel A. Morel*
                                                 Miguel A. Morel


<u>**Via E-Mail**</u>

Jamie Harrison Zidell, Esq.
Stephen Fox Jr., Esq.
J.H. ZIDELL P.A.
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel. (305) 865-6766
Fax. (305) 865-7167
zabogado@aol.com
stephen.fox.esq@gmail.com