UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-21162-CIV-LENARD/GOODMAN

**MARY QUINTERO,**

    Plaintiff,

**v.**

**JORGE LUIS LOPEZ
and MARILE LOPEZ,**

    Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (D.E. 59)

**THIS CAUSE** is before the Court on Defendants Jorge Luis Lopez and Marile Lopez's ("Defendants") Motion for Summary Judgment, ("Motion," D.E. 59), filed February 24, 2016. Plaintiff Mary Quintero ("Plaintiff") filed a Response on March 14, 2016, ("Response," D.E. 69), to which Defendants filed a Reply on March 22, 2016, ("Reply," D.E. 72). Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

**I.**    **Background**[1]

Plaintiff worked for Defendants as a domestic services employee from July 4, 2007 until February 27, 2015. (Def.'s Facts ¶ 1.) Plaintiff is suing Defendants under the

---

[1] Unless otherwise noted, the following facts are gleaned from Defendants' Concise Statement of Undisputed Material Facts, ("Def.'s Facts," D.E. 60), Plaintiff's Answer to Defendant's Concise Statement of Material Facts, ("Pla.'s Facts," D.E. 69-1), and Defendants' Reply to Plaintiff's Facts, ("Def.'s Reply Facts," D.E. 72). All facts are undisputed unless otherwise noted.

Fair Labor Standards Act, 29 U.S.C. §§ 201-209, for unpaid overtime wages between December 1, 2012 to February 28, 2015. (See Compl. ¶¶ 14-15.)

Plaintiff was an hourly-paid employee—earning $13.00 per hour until January 2015, and $14.00 per hour thereafter. (Def.'s Facts ¶ 1.) During the period in question, Plaintiff was employed as a non-live-in housekeeper. (Id. ¶ 2.) Her work schedule was from 7:00 A.M. to 4:00 P.M., with a one-hour lunch break. (Id. ¶ 3.) Plaintiff testified that she understood that she was employed to work eight hours per day, forty hours per week, and that she was entitled to take a one-hour lunch break for which she would not be paid. (Id. ¶ 5.)

Plaintiff testified that she took her lunch break at approximately 1:00 P.M., but that she did not take a full lunch break because she had to answer the phones and open the door for visitors who came to the house. (Id. ¶ 10.) She testified that she elected to work instead of taking her lunch break, and that it was her choice not to take her lunch break. (Id. ¶ 11.)

Defendants provided Plaintiff with timesheets and instructed her to document her hours worked and submit completed timesheets to Maria Fenanda Rodriguez, who handles payroll for Defendants. (Id. ¶ 8.) Defendants instructed Ms. Rodriguez to pay Plaintiff for every hour that she recorded on her timesheet. (Id. ¶ 9.)

Plaintiff testified that she was instructed to document all of her time worked.[2]  (Id. ¶ 15.)  Plaintiff's paystubs accurately reflect that when she recorded overtime she was compensated at the applicable overtime rate.  (Id. ¶ 16; Pla.'s Facts ¶ 16.)  Plaintiff testified that she did not record working through lunch because she understood that her work schedule called for her to work only eight hours per day and forty hours per week.  (Def.'s Facts ¶ 17.)

Plaintiff testified that although she was aware that she could have informed Defendants that she did not take her full one-hour lunch break, or that she felt that she should be paid for nine hours per day, she never did so.  (Def.'s Facts ¶ 13.)  It is undisputed that Defendants were "rarely" at the house during the time when Plaintiff took her lunch break.  (Id. ¶ 12.)

From November 3, 2014 to November 7, 2014, Plaintiff worked as a live-in domestic services employee at Defendants' home, filling in for another of Defendants' employees who was out for that week.  (Id. ¶ 22.)[3]

---

[2]  Plaintiff disputes this statement, stating that she was "instructed not to document lunch."  (Pla.'s Facts ¶ 15.)  However, the transcript of Plaintiff's deposition reveals the following exchange:

> Q. With respect to the time sheets, you were instructed to document all your time, correct?
> A. Yes.

(Quintero Dep. at 29:7-9.)

[3]  Although Defendant's Statement of Facts states that this occurred during the week of November 3, 2015, Ms. Lopez's Declaration states that it was the week of November 3, 2014, and it is undisputed that Plaintiff left Defendants' employ in February 2015.  (See Decl. of Marile Lopez (D.E. 60-3) ¶ 6.)

3

## II. Legal Standard

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, under Federal Rule of Civil Procedure 56(f)(1), the Court may grant summary judgment for the non-moving party "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(1); see also Gentry v. Harborage Cottages-Stuart, LLLP, 654 F.3d 1247, 1261 (11th Cir. 2011). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotation omitted). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the

nonmoving party.  Id. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324; see also Fed. R. Civ. P. 56(c).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial."  Id. at 587.  An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Id.

**III. Discussion**

Defendants move for summary judgment on the grounds that Plaintiff cannot establish that Defendants had actual or constructive knowledge of any alleged overtime worked. (Mot. at 6.)  They further argue that she is not entitled to overtime for the week of November 3, 2014 when she worked as a live-in domestic service employee.  (Id. at 8.)

5

Plaintiff argues that a genuine issue of material fact exists as to whether Defendants had knowledge that Plaintiff was working through lunch without compensation. (Resp. at 5-15.)[4]

"Under the FLSA, an employer may not employ his employee for a workweek longer than forty hours unless his employee receives overtime compensation at a rate not less than one and a half times his regular rate." Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1314 (11th Cir. 2007) (citing 29 U.S.C. § 207(a)(1)). The Eleventh Circuit has explained that to prevail on an FLSA claim, a plaintiff "must prove that they were suffered or permitted to work without compensation." Id. "Courts have interpreted this to mean that a FLSA plaintiff must demonstrate that (1) he or she worked overtime without compensation and (2) the [defendant] knew or should have known of the overtime work." Id. at 1314-15 (citing Reich v. Dep't of Conservation and Nat. Res., 28 F.3d 1076, 1082 (11th Cir. 1994)). "Although a FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation, '[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee.'" Id. at 1315 (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)).

---

[4] Although Defendants allege—in the "Introduction" section of their Motion—that Plaintiff cannot establish that Defendants willfully and intentionally violated the FLSA so as to entitle her to liquidated damages, (see Mot. at 1), they offer no substantive argument regarding this issue. The Court will therefore not address it. See F.T.C. v. Leshin, No. 06-61851-CIV, 2007 WL 4287625, at *1 n.1 (S.D. Fla. Dec. 5, 2007) ("Because the good faith issue was not properly briefed by the parties, the Court will not address the issue.").

### a.      Whether Defendants had knowledge of Plaintiff's overtime[5]

Defendants argue that they had no actual or constructive knowledge that Plaintiff was working through her lunch break. (Id. at 6-8.) Plaintiff argues that knowledge may be imputed to Defendants because Ms. Rodriguez instructed Plaintiff not to record working through her lunch break. (Resp. at 5 (citing Bailey v. TitleMax of Ga., Inc., 776 F.3d 797, 801 (11th Cir. 2015)).) Thus, she argues that whether Defendants had constructive knowledge that she worked through lunch is a material fact for the jury. (Id. at 7.) Plaintiff further argues that there is evidence that Defendants had actual knowledge that she worked through lunch. (Id. at 9.)

In general, "'[a]n employer does not have knowledge of uncompensated overtime when an employee submits time sheets showing such overtime did not occur.'" Gilbert v. City of Miami Gardens, 625 F. App'x 370, 373 (11th Cir. 2015) (quoting Gaylord v. Miami-Dade Cnty., 78 F. Supp. 2d 1320, 1325 (S.D. Fla. 1999)). However, "'where the

---

[5]      Although Defendants allege, in passing, that Plaintiff failed to satisfy the first prong of the test to establish an FLSA overtime wage claim—i.e., that she worked overtime without compensation, see Allen, 495 F.3d at 1314-15—they offer no substantive argument regarding that prong, and focus solely on the knowledge prong. (Mot. at 6-8.) And as Plaintiff points out, this Court has previously ruled that a plaintiff's uncorroborated deposition testimony that she performed work for which she was improperly compensated is sufficient to survive summary judgment. See Martinez v. Eddy Coto Produce, Inc., et al., Case No. 14-24054-Civ-Lenard/Goodman, Order Denying Defendants' Motion for Summary Judgment (D.E. 51) at 8-11 (S.D. Fla. Jan. 19, 2016) (citing Diaz v. Jaguar Rest. Grp., LLC, 649 F. Supp. 2d 1343, 1363 (S.D. Fla. 2009); Santelices v. Cable Wiring, 147 F. Supp. 2d 1313, 1328-29 (S.D. Fla. 2001)). Therefore, to the extent that the Court is required to make a finding regarding the first prong of the test to establish an FLSA overtime wage claim, the Court finds that Plaintiff's deposition testimony, in which she states that she performed work for which she was improperly compensated, is sufficient to establish a genuine issue of material fact as to whether she worked overtime without compensation. See id.; Diaz, 649 F. Supp. 2d at 1363; Santelices, 147 F. Supp. 2d at 1328-29.

employer encourages artificially low reporting, it cannot disclaim knowledge.'" Id. (quoting Allen, 495 F.3d at 1319).

Plaintiff argues that Defendants cannot disclaim knowledge because Ms. Rodriguez, Defendants' bookkeeper, instructed Plaintiff not to report working through lunch. (Resp. at 5.) Plaintiff argues that Ms. Rodriguez's knowledge that Plaintiff was working uncompensated overtime may be "imputed" to Defendants. (Id. (citing Bailey, 776 F.3d at 801).)

However, this is a patent misrepresentation of the evidence—there is no evidence that Ms. Rodriguez ever instructed Plaintiff not to report working through lunch, or even that Ms. Rodriguez knew Plaintiff was working through lunch. Rather, Plaintiff merely testified that she recorded eight hours instead of nine hours "[b]ecause the lady always made it clear that it was eight hours that should be reflected on the sheet, always." (Quintero Dep. at 26:14-16.) Even when considered in the light most favorable to Plaintiff, the fact that Ms. Rodriguez told Plaintiff that her timesheet should reflect forty hours worked, if true, does not by itself indicate that Ms. Rodriguez knew or had reason to know that Plaintiff was working through lunch.

Indeed, Plaintiff testified that Ms. Rodriguez worked at Defendants' law firm, and that Plaintiff only communicated with her if she called the office. (Id. at 22:20-25, 23:1-4.) She further testified that although Ms. Rodriguez handled payroll for Defendants' domestic employees, Plaintiff never communicated with her regarding payroll. (Id. at 23:11.) Plaintiff admitted that she reviewed her paystubs and that when she recorded working in excess of forty hours she was paid at the appropriate overtime rate. (Id. at

8

23:17-20.) She also stated that if her paystub was incorrect for any reason, she could have called Ms. Rodriguez and informed her of the mistake, but that she never did. (Id. at 23:21-25; 24:1-5.) "I never called her for anything." (Id. at 24:5.) Thus, there is absolutely no evidence that Ms. Rodriguez knew, or had any reason to know, that Plaintiff was working through her lunch break, or that she was otherwise underreporting her hours. Therefore, a reasonable fact finder could not determine that Ms. Rodriguez squelched truthful responses or encouraged artificially low reporting by directing Plaintiff to record working forty hours per week.

For that reason, Plaintiff's reliance on Bailey is unavailing. In Bailey, the plaintiff's supervisor directed the plaintiff to underreport his hours and to work off the clock. 776 F.3d at 799. The plaintiff's supervisor also repeatedly edited the plaintiff's timesheets to record fewer hours than he actually worked. Id. Thus, the supervisor knew that the plaintiff was working unpaid overtime, and because "[k]nowledge may be imputed to the employer when its supervisors or management 'encourage [ ] artificially low reporting[,]'" the plaintiff has established the knowledge element of an unpaid overtime wage claim under the FLSA. Id. at 801 (quoting Allen, 495 F.3d at 1314-15). Here, there is no evidence that Ms. Rodriguez knew that Plaintiff was working through her lunch hour, or otherwise encouraged artificially low reporting.

However, the Eleventh Circuit has acknowledged that an employer can be charged with constructive knowledge even when an employee has not alleged a supervisor's direct knowledge. See Reich v. Dep't of Conservation and Nat. Res., State of Ala., 28 F.3d 1076, 1082 (11th Cir. 1994). In Reich, the Eleventh Circuit stated that if an

9

employer had an opportunity to acquire knowledge of an employee's work through reasonable diligence, then the employer can be charged with constructive knowledge. Id. (citing People ex rel. Price v. Sheffield Farms-Slawson-Decker Co., 121 N.E. 474, 476 (N.Y. 1918)). In Reich, there was evidence that the plaintiffs worked overtime without reporting it, despite the fact that the employer had a policy against working overtime and employees could be disciplined for working overtime. Id. at 1083. For example, a study was commissioned that revealed that the employee "officers were working in excess of forty hours a week during hunting season in order to adequately perform their duties, and falsifying their weekly reports to conceal their overtime." Id. at 1080. The Eleventh Circuit held that the employer "was required to do more than to simply periodically issue admonishments to avoid liability under the FLSA." Id. at 1084. "[T]he Department could have acquired actual knowledge of the continuing overtime problem through the exercise of reasonable diligence." Id.

Here, Plaintiff testified at her deposition that she did not take a full one-hour lunch break because she "did not have time." (Quintero Dep. at 16:10.)

> Q. Did you ever complain to Mr. and Mrs. Lopez regarding the fact that you did not have time during your workday to complete all of your responsibilities?
>
> A. Yes, but they would answer that there was – she would answer that there was nothing she could do. That I had to be accountable and do my job.

(Id. at 17:3-8.) The Court finds that when considered in the light most favorable to Plaintiff, this evidence could lead a reasonable fact finder to determine that, through the exercise of reasonable diligence, Defendants had an opportunity to acquire knowledge of

10

Plaintiff's overtime work. See Reich, 28 F.3d at 1082 (finding that with reasonable diligence the employer could have discovered that the plaintiffs were working overtime where there was evidence that the plaintiffs could not complete all of their job duties within a forty hour workweek). Specifically, Plaintiff told Defendants that she did not have enough time in her workday to complete all of her duties, but Defendants do not allege that Plaintiff ever failed to complete her duties. A reasonable inference is that Plaintiff was required to work through her lunch hour to complete her duties. See Frew v. Tolt Techs. Serv. Grp., LLC, No. 6:09–CV–49–ORL–19GJK, 2010 WL 557940, at *5 (M.D. Fla. Feb. 11, 2010) (finding that "it may be reasonably inferred" from the plaintiff's deposition testimony that his employer expected him to answer service calls while on his lunch break and nevertheless "required him to enter a 30–minute unpaid lunch break on his time sheet each day even if he worked through lunch"); see also Allen, 495 F.3d at 1320 (finding that the defendant had constructive knowledge of one plaintiff's overtime because she was required to "sign out" during lunch break but there was evidence her supervisors knew she was working during lunch).

Having found that Plaintiff has established a genuine issue of material fact as to whether Defendants had constructive knowledge of her uncompensated overtime work, it need not address Plaintiff's remaining argument regarding actual knowledge.[6]

---

[6] Plaintiff's "actual knowledge" argument is premised upon evidence that Defendants were "rarely" at home during Plaintiff's lunch break. At Mrs. Lopez deposition, the following exchange occurred:

> Q.   Do you know generally how they would take their lunches? Would they all make food together or can you elaborate on that?

11

### b. Whether Plaintiff is entitled to overtime compensation for the week of November 3, 2014.

In her Complaint, Plaintiff alleges that she worked 71.5 hours during the week of November 3, 2014 through November 7, 2014. (Compl. ¶ 14.) For that week, Defendants paid her 66.5 hours at her regular rate and did not compensate her for her five lunch hours, which she alleges she worked through. (See id.) Thus, Plaintiff alleges that Defendants owe her an additional half-time rate for the 26.5 hours they paid her regular rate, and time-and-a-half for the five hours they did not pay her. (See id.)

Defendants argue that for the week of November 3, 2014, Plaintiff agreed to work as a live-in domestic service employee and, therefore, that the FLSA's overtime requirement is inapplicable to work Plaintiff performed that week. (Mot. at 8 (citing 29 U.S.C. § 213(b)(21).) Plaintiff argues that she was not a live-in domestic services employee because she did not reside in the household as required by the exemption; rather she "stayed there overnight for a week to fill in for another employee." (Resp. at 15.) At a minimum, Plaintiff argues that she is entitled to minimum wage compensation for the five lunch hours for which she was not compensated that week. (Id.)

In a Declaration filed in support of the instant Motion, Mrs. Lopez stated:

> 5. In late October 2014, I asked Ms. Quintero if she could work as a live-in domestic services employee at our home during the week of

---

> A. I really don't know. Very rarely was I ever there to see this. I don't know.

(D.E. 60-2 at 20:19-23.) Plaintiff argues that "rarely" "means sometimes they were, which would give Defendants actual, not even constructive knowledge, of overtime work." (Resp. at 9.)

12

> November 3, 2014.  I asked Ms. Quintero if she could do so because Lidia Gonzalez, another employee at our home, was going to be out of work during the week of November 3, 2014.
>
> 6.   Ms. Quintero agreed, and from November 3, 2014 to November 7, 2014, Ms. Quintero resided in our home and was employed as a live-in domestic services employee.  Ms. Quintero was paid for each hour that she worked and reported during that week.

(D.E. 60-3 at 2 ¶¶ 5-6.)  Plaintiff cites to no evidence in the record that refutes Mrs. Lopez's Declaration.  Nor does she cite any authority distinguishing between domestic service employees that "reside" in a household and those who "stay[] there overnight" while filling in for live-in worker.

The FLSA's overtime wage provisions do not apply to "any employee who is employed in domestic service in a household and who resides in such household[.]"  29 U.S.C. § 213(b)(21).  The Department of Labor recently stated that a domestic service employee is considered to be a "live-in" domestic service employee if she "resides on his or her employer's premises on a 'permanent basis' or for 'extended periods of time.'"  Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454, 60,474 (Oct. 1, 2013); see also 29 C.F.R. 785.23.  "Further, in accordance with the Department's existing policy, employees who work and sleep on the employer's premises for five days a week (120 hours or more) are considered to reside on the employer's premises for 'extended periods of time.'"  Id.  "If less than 120 hours per week is spent working and sleeping on the employer's premises, five consecutive days or nights would also qualify as residing on the premises for extended periods of time."  Id.  "For example, employees who reside on the employer's premises five consecutive days from 9:00 a.m.

13

Monday until 5:00 p.m. Friday (sleeping four straight nights on the premises) would be considered to reside on the employer's premises for an extended period of time." Id. However, "[e]mployees who work only temporarily, for example, for only a short period of time such as two weeks, for the given household are not considered live-in domestic service workers, because residing on the premises of such household implies more than temporary activity." Id.

Reading these application notes together, it appears that the Department of Labor views temporary live-in domestic service employees as falling outside the overtime wage exemption. Here, although Plaintiff was a full-time domestic service employee, she only served as a live-in domestic service employee temporarily for five days while filling in for a co-worker. Accordingly, the Court finds that Plaintiff was not a live-in domestic service employee from November 3, 2014 to November 7, 2014, and therefore she was not exempt from the FLSA's overtime wage requirement. See id.

Consequently, Defendants are not entitled to summary judgment on Plaintiff's claim for overtime wages for the week of November 3, 2014 to November 7, 2014.

**IV. Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment (D.E. 59) is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 6th day of June, 2016.

_____
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**